In the Matter of AMERICAN JEWISH EVANGELIZATION SOCIETY, INC., and AMERICAN JEWISH MISSIONARY SOCIETY, INC., Petitioners.

Supreme Court, Special Term, Kings County, August 18, 1944.

*Frank E. Davis* for petitioners.

F. E. JOHNSON, J. These are two certificates of incorporation under the Membership Corporations Law which are presented by the same five signers. The purpose of the first corporation is " to spread the Gospel among the Jews, to evangelize those of Jewish faith, and to do missionary work among the Jews in

the United States and other parts of the world ", and " the territory in which the operations of the said. corporation are to be principally conducted is the City of New York ". The second has as its purpose the spread of the Gospel among " the Jews in the United States of America and in all parts of the world ", and the territory mentioned is the same as in the other certificate. The signers have names that might easily be said to be those of Jewish nationality, and it is a fair inference from the certificates that they are now either connected with some Christian church or are desiring to independently do Christian missionary work.

It would seem as if sound public policy ought not to allow the State itself to seem to approve or encourage the formation of a corporation whose object is the changing of the religious beliefs of a specified group. There seems to be a real distinction between selecting such a group and seeking to evangelize generally.

Our State Constitution says, " The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind ". (N. Y. Const., art. I, § 3.) It might fairly be said that that is a guarantee that no group will seem to be the object of a State-approved or State-endorsed movement to persuade that group to change its religious beliefs. It is true that the Supreme Court of the United States has gone very far in support of the right of Jehovah's Witnesses to try to convert others, and has even failed to come to the rescue of those who do not want to be converted and who insist that they are being annoyed by persistent, inconsiderate and fanatical missionaries who have no respect for privacy and who insist on interviewing people who do not want to be interviewed, in trying to interest them in religious propaganda that they are bitterly opposed to being approached about. These decisions, however, seem to deal with clumsy local ordinances which violated fundamental principles.

Surely, the corollary of that must have some force, namely, that the guaranteed right in this State to the " free exercise and enjoyment of religious profession " ought not to be subjected to a State-approved corporate drive to interfere, even with the best motives and for the highest purposes, with this very exercise and enjoyment of the religious beliefs of any group. What individuals may do is entirely different because they do not call upon the State to approve of their efforts. Unincorporated associations, which do not ask the approval of the

Supreme Court or the sanction and help of the State itself, ought to be just as able as any corporation to achieve the ends that these signers are aiming at.

If the right to carry out the missionary activities of any group, such as Jehovah's Witnesses, is not to be interfered with except in a lawful manner, it must be because the courts are solicitous to preserve to every person and group complete freedom of religious worship. The efforts of the courts to upset local ordinances badly drawn and passed without any understanding of the principles involved, and which were aimed at Jehovah's Witnesses, do not mean that they are free to carry their aggressive propaganda forward without any limit or control. It merely means that such ordinances as will leave those of other beliefs in peace, if they desire to be left in peace, shall conform to the law of the land and shall not be discriminatory. When such ordinances are properly drawn, the right of one religious group to force itself upon another will collide with this guarantee which the other group has of equal religious freedom and the right to the free enjoyment of its own religious profession.

The prohibition against interfering with " the free exercise " of religion is in the First Amendment to the Federal Constitution, and the provisions in both Constitutions, taken together, seem to promise the citizen freedom from interference with free enjoyment and exercise of his religious beliefs. The decisions in the *Jehovah's Witnesses* cases, therefore, must not be misread to mean court approval of the right of one religious group to pursue another.

No citizen ought to ask the State to give its endorsement to any corporate effort which is bound to result in an attempt to persuade citizens of a particular faith to abandon their faith for another. In that process, it seems to me, there is an inevitable interference with that freedom which is guaranteed by both Constitutions. The certificates are not approved for these reasons.